BRAY v. INSURANCE CO.

(Filed October 31, 1905).

*Fire Insurance—Iron Safe Clause Construed.*

1. The provisions in the "Iron Safe Clause" of an insurance policy (1) That the assured shall make an inventory "within 30 days after the date of the policy" and (2) that he shall keep a set of books "from the date of the inventory as provided in the first section," are not violated where the fire occurred within 23 days and before any inventory was taken or set of books kept, as the assured has the full period of 30 days after the date of the policy to make the inventory and a like period within which to comply with the provision as to keeping a set of books, unless the inventory is sooner taken.

2. Where a clause in an insurance policy is ambiguously worded or there is doubt concerning its true meaning, it should be construed rather against its author than the assured, and any such doubt should be resolved in favor of. the latter.

ACTION by A. J. Bray and another against the Virginia Fire and Marine Insurance Co., heard by *Judge G. W. Ward* and a jury, at the August Term, 1905, of the Superior Court of PERSON County. From 'a judgment for the plaintiffs, the defendant appealed.

*Kitchin & Carlton* for the plaintiffs.
*Watson, Buxton & Watson* for the defendant.

WALKER, J.   This action was brought by the plaintiffs to recover the amount of a policy of insurance for five hundred dollars, issued to them on the 19th day of December, 1904, and by which the defendant agreed to insure their stock of merchandise from loss by fire.   The only defense pleaded was that the plaintiffs had not observed and kept the provisions of what is known in such policies as the "Iron Safe Clause," in that they had not taken an inventory, or kept books as

therein directed. The clause in this policy is in the usual form, and requires of the assured: (1) That he shall take a complete itemized inventory of his stock on hand, at least once in each calendar year, and one shall be made within thirty days after the date of the policy, unless such an inventory has already been taken within the twelve calendar months next preceding said date, the policy to become null and void if the inventory is not taken, and the unearned premium to be returned on demand. (2) That he shall keep a set of books, which must clearly and plainly present a complete record of business transacted, including purchases, sales and shipments, for cash and credit, from the date of the inventory, as provided in the first section of the clause, and during the continuance of the policy. (3) That he shall keep such books and inventory securely locked in a fire-proof safe at night, and at all times when his building is not actually open for business, or, failing in this, in some place not exposed to a fire which would destroy the building.

In the event of failure to produce such set of books and the inventory for the inspection of the company, the policy to become void, and such failure to be a perpetual bar to any recovery thereon.

We have reproduced the material portions of the clause, as the decision of the case must turn upon its true construction. The counsel for the defendant, in an able argument, and well prepared brief, maintained that the clause in question is a valid one, as containing a promissory warranty, which if not complied with, will defeat a recovery upon the policy, and a large majority of the courts, it seems, have so held, but we do not deem it necessary to enter upon a discussion of the proposition, or to undertake to decide the same, as the validity of the clause was not seriously contested by counsel for the plaintiffs who presented his case with unusual force and clearness, and distinctly placed the plaintiffs' right to recover upon the ground that by a fair interpretation

of the clause, when considered in connection with the facts of the case, they had not, in any particular, violated its provisions. We will therefore assume, for the sake of the argument and without deciding the question, that the clause is valid as a whole, and in each and every part, and proceed to examine the case upon that hypothesis.

The clause first provides for the making of an inventory within thirty days after the date of the policy. It appears in this case that none had been made prior to that time. The fire occurred on January 11, 1905, just twenty-three days after the policy was issued by the defendant, so that the full time allowed to the plaintiffs for preparing the inventory, had not expired by seven days. So far there was not much, if any, dispute between counsel as to the proper construction of the clause. They did differ widely as to the true intent and meaning of the second section. Counsel for defendant contended that the books are required by that section to be opened and kept from the date of the policy, while counsel for plaintiffs insist that by the explicit terms in which the provision is couched, they are required to be opened and kept only "from the date of the inventory, as provided for in the first section of the clause," and as, by the first section, the assured have the full period of thirty days after the date of the policy to make the inventory, it logically follows that they must have a like period within which to comply with the provision as to keeping a set of books, unless the inventory is sooner taken. It seems to us perfectly clear that in this contention, the plaintiffs' counsel must be right. If the requirement that books shall be kept is to be effective only from the date of the inventory, and it is expressly so stated in the contract of insurance, the plaintiffs could not be in default as to this provision, until either the inventory was actually taken, or until the time for taking it had expired; for, until the happening of the first event, namely, the completion of the inventory, the time had not arrived when they were re-

quired to open a set of books, and, until the expiration of thirty days from the date of the policy, it could not be determined when the inventory would be taken, if at all, and consequently the provision as to keeping books was not in force. The most that can be said in behalf of the defendant is that, during the thirty days succeeding the date of the policy, the duty of keeping books was, so to speak, in a state of abeyance or suspension, awaiting the happening of the event upon which it depended. It may well be asked, how could the plaintiffs keep books, showing the transactions in their store from the date of the inventory, until such an inventory had been taken? If the clause in question is ambiguously worded, so that there is any uncertainty as to its right interpretation, or if for any reason there is doubt in our minds concerning its true meaning, we should construe it rather against the defendant, who was its author, than against the plaintiffs, and any such doubt should be resolved in favor of the latter, giving, of course, legal effect to the intention, if it can be ascertained, although it may have been imperfectly or obscurely expressed. *Grabbs v. Ins. Co.,* 125 N. C., 389. This is the rule to be adopted for our guidance in all such cases, and one reason, at least, for it is that the company has had the time and opportunity, with a view to its own interests, to make clear its meaning, by selecting with care and precision language fit to convey it, and if it has failed to do so, the consequences of its failure should not even be shared by the assured, so as to deprive him of the benefit of the contract, as one of indemnity for his loss. But we entertain no doubt as to what the parties meant, and the conclusion we have reached, is fully sustained by the well considered opinion of the court in *Insurance Co. v. Waugh,* 60 Neb., 348, wherein it is said: "Under any ordinary and fair rule of construction, the assured was not required to keep books of account until the inventory had been taken, and thirty days were given in which to perform that act. The fire oc-

curred within less time. There existed no legal obligation on the assured to preserve books of account in a fire-proof safe, or other place secure from fire, in said building until the expiration of the time in which an inventory was to be taken." This language was used with reference to a policy having the same phraseology as the one in this case. In another case the same court, construing a policy which required an inventory to be taken at least once a year, and after fully discussing the question raised, said: "The time, therefore, for taking an inventory of the stock of goods insured, did not expire until a year after the policy was written, and as the loss occurred in less time, no default in this condition, or any condition dependent thereon, is shown or can rightfully be claimed." *Insurance Co. v. Jeary,* 60 Neb., 338. This is the pivotal and decisive question in the case, and as our opinion upon it is against the defendant, it follows that the plaintiffs were entitled to recover the amount of the policy, and there was consequently no error in the charge of the court to the jury, that if they found the facts to be in accordance with the plaintiffs' evidence, they should return a verdict upon the issue, in their favor.

No Error.