10641

NADER v. AMERICAN INS. CO.

(107 S. E. 926)

INSURANCE—FAILURE TO KEEP BOOKS PRIOR TO MAKING OF INVENTORY, AND WITHIN 30 DAYS AFTER ISSUANCE OF POLICY HELD NOT TO HAVE AVOIDED POLICY.—Where a merchant's fire policy required him to take an inventory within 30 days of issuance, and to keep a set of books presenting a complete record of business transacted from the date of inventory, failure to keep books during the first 30 days after issuance of the policy, when loss occurred, did not avoid the policy.

Before WHALEY, J., County Court, Richland. May, 1920. Reversed and new trial ordered.

Action by K. Nader against the American Insurance Co. From a directed verdict for defendant the plaintiff appeals.

*Messrs. Moffat & Marion,* for appellant, cite: *Books were to be kept in iron safe only from date of inventory*: 110 Va. 118, 65 S. E. 465; 139 N. C. 390, 51 S. E. 923; 143 N. C. 339, 55 S. E. 118; 51 L. R. A. ——; 83 N. W. 81; 35 N. E. 720 (Ind.); 61 Mo. App. 352; 20 Ind. App. 33; 14 R. C. L. 1142, Sec. 324. *Sufficient proof by duplicate bills*: 53 S. E. 943 (W. Va.). *Violation of iron safe clause could not affect insurance on fixtures in the same policy*: 83 S. E. 731 (W. Va.); 23 L. R. A. 719; 18 So. 86 (Miss.); 75 Pac. 1121 (Okla.); 75 Pac. 1135 (Okla.); 35 S. W. 955 (Tex.); 37 S. W. 606 (Tex.); 6 L. R. A. 526; 16 Neb. 90. *Non-waiver agreement can be waived by acts and conduct of company*: 78 S. C. 433.

*Messrs. Fowles & Bailey,* for respondent, cite: *Iron safe clause sustained*: 80 S. C. 392; 92 S. W. 1137 (Mo.); 70 So. 156 (Ala.); 237 Fed. 171. *Bills not a compliance with clause*: 36 S. E. 821 (Ga.); 52 L. R. A. 70. *Breach of iron safe clause voided the policy*: 19 L. R. A. 211; 57 Conn. 335, 4 L. R. A. 759; 119 Ind. 155; 14 R. C. L. 114; 1 Wood on Fire Ins. 384; 36 S. E. 821 (Ga.).

June 30, 1921.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an action on a policy of fire insurance. The plaintiff commenced the business of a merchant on the 1st of November, 1919.

The defendant issued a policy of insurance to the plaintiff on the 1st of December, 1919, in the sum of $1,600, for which $850 covered the stock of merchandise, and the $750 the furniture and fixtures; the premium was $29.95.

The following covenant and warranty was made a part of the policy:

First. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of the issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

Second. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of his policy.

Third. The assured will keep such books and inventory and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.

In the event of failure to produce such set of books and

inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon.

On the 24th of December, 1919, the stock of merchandise and the furniture and fixtures were totally destroyed by fire.

At the close of the testimony, the defendant's attorneys made a motion for a directed verdict, on the ground that the provision in the policy, known as the iron-safe clause, had been violated, and there was no testimony of any waiver, on the part of the insurer; and, second, on the ground that the suit was brought within 60 days after the fire, when the policy provides that suit shall not be brought until 60 days after the filing of a verified claim with the insurance company. And on the further ground that the provision of the policy with reference to the filing of the verified proof of loss had been violated by the plaintiff, and there was no evidence of waiver on the part of the defendant.

His Honor, the Presiding Judge, overruled the second and third grounds of the motion for a directed verdict on the ground that there was evidence of waiver.

Therefore the only question properly before the Court for determination is whether there was error on the part of his Honor, the Presiding Judge, in ruling that there was a forfeiture of the policy, although the fire took place within 30 days after the policy was issued.

The authorities upon this question are in irreconcilable conflict, as will be seen by reference to those upon which the appellant's and the respondent's attorneys rely.

In construing a policy with similar covenants to those hereinbefore set out, the Court, in the case of *Bray v. Va. Fire Ins. Co.*, 139 N. C. 390, 51 S. E. 922, used this language:

"If the requirement that books shall be kept is to be effective only from the date of the inventory, and it is expressly so stated in the contract of insurance, the plaintiffs could not be in default as to this provision until either the inventory was actually taken, or until the time for taking it had expired; for, until the happening of the first event, namely, the completion of the inventory, the time had not arrived when they were required to open a set of books, and, until the expiration of 30 days from the date of the policy, it could not be determined when the inventory would be taken, if at all, and consequently the provision as to keeping books was not in force. The most that can be said in behalf of the defendant is that, during the 30 days succeeding the date of the policy, the duty of keeping books was, so to speak, in a state of abeyance or suspension, awaiting the happening of the event upon which it depended. It may well be asked, how could the plaintiffs keep books, showing the transactions in their store from the date of the inventory, until such an inventory had been taken."

This is a correct statement of the rule in such cases.

New trial.